*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DWIGHT WALKER, Personal Representative of the
ESTATE OF TERRANCE RAGAN,

       Plaintiff-Appellee,

v

LORENGO WATTS,

       Defendant-Appellant.

UNPUBLISHED
September 10, 2025
1:49 PM

No. 371458
Wayne Circuit Court
LC No. 23-005011-NI

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Lorengo Watts, appeals as of right the trial court order granting a default judgment in favor of plaintiff, Dwight Walker, as personal representative of the Estate of Terrance Ragan. In addition to challenging the entry of the default judgment, Watts also challenges the trial court's earlier order denying his motion to set aside a default. For the reasons stated in this opinion, we affirm in part and reverse and remand in part.

## I. BASIC FACTS

This case arises from a fatal vehicle-pedestrian collision that occurred on Hoover Road in the City of Detroit, in the early morning hours of August 22, 2020. A witness who was driving northbound on Hoover Road observed Terrence Ragan sitting in the roadway, near a curb, with blood running down his face. She turned around to try and help Ragan, but by the time she returned, he was lying down in the road. It is unclear whether he was alive at that point. The witness called the police. In the meantime, Watts, who was driving a City of Detroit bus, ran over Ragan's body. Watts stopped. A black car then ran over Ragan's body and continued on without stopping. Another car stopped in the street and directed traffic around Ragan's body.

Plaintiff initially filed an action against Watts and the City of Detroit, but his count against Watts was dismissed for failure to serve him with the complaint. Plaintiff then filed a second lawsuit against Watts, alleging gross negligence. Plaintiff again had difficulty serving Watts, so he filed a motion seeking to use alternative service. The court granted the motion. Thereafter, plaintiff, in compliance with an order regarding alternate service, sent Watts a copy of the

summons and complaint by certified and first-class mail at his home address and the address of his employer, the Detroit Department of Transportation. Plaintiff also tacked the summons and complaint to Watts's door. Finally, he, allegedly, personally served Watts.

Watts never answered the complaint. As a result, plaintiff requested entry of a default against Watts. The court granted that motion. Watts then moved to set aside the default. He argued that there was good cause to set aside the default because he had not been properly served. He also submitted an affidavit to show that he had a meritorious defense. The court, however, denied the motion to set aside the default. Plaintiff then moved for entry of a default judgment, requesting $4.5 million in damages. Following a hearing at which plaintiff testified, the trial court entered a default judgment in the amount of $4.5 million against Watts. The court then denied Watts's motion for reconsideration. This appeal follows.

## II. MOTION TO SET ASIDE DEFAULT

### A. STANDARD OF REVIEW

Watts argues that the trial court abused its discretion by not setting aside the default. A trial court's decision to deny a motion to set aside a default is reviewed for an abuse of discretion. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). "A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes." *Id*. "A trial court necessarily abuses its discretion when it premises its decision on an error of law." *Id*. at 294-295.

### B. ANALYSIS

A default may only be set aside "if the moving party demonstrates good cause and identifies facts showing a meritorious defense, verified as required under MCR 1.109(D)(3)." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 295 (quotation marks and citation omitted). "Good cause" and "meritorious defense" are two separate elements that must be considered individually. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 230; 600 NW2d 638 (1999).

As explained in *Tolas Oil & Gas Exploration Co*, 347 Mich App at 295, the following should be considered by the trial court when determining whether there is good cause to set aside a default:

> whether the party completely failed to respond or simply missed the deadline; if the party simply missed the deadline, how long afterward the party filed; how long the movant took to move to set aside the default; whether there was defective process or notice; the circumstances behind the failure to file or timely file; whether the failure was knowing or intentional; the size of the judgment; whether the judgment results in ongoing liability; and whether the internal policies of the insurer were followed, if the defaulting party was an insurer.

" 'Good cause' can be shown by: (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result

from permitting the default to stand." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 221; 760 NW2d 674 (2008) (quotation marks and citation omitted).

Watts argues that he established good cause by the fact that he was never properly served and that constitutes a "substantial defect or irregularity" in the proceedings. Watts points out that plaintiff filed an earlier case against him that arose from the same facts, but that he had been dismissed from that case because plaintiff failed to properly serve him. Rather than moving to set aside the dismissal in the earlier case, plaintiff filed the instant case. Watts maintains that plaintiff did so to avoid providing notice to the defense lawyer in the earlier case that there was a new case.

In support of his argument, he directs this Court to MCR 2.102(F), which provides that a court may set aside a dismissal if the parties stipulate to the dismissal being set aside or if all of the following conditions are met:

> (1) within the time provided in subrule (D), service of process was in fact made on the dismissed defendant, or the defendant submitted to the court's jurisdiction;
>
> (2) proof of service of process was filed or the failure to file is excused for good cause shown;
>
> (3) the motion to set aside the dismissal was filed within 28 days after notice of the order of dismissal was given, or, if notice of dismissal was not given, the motion was promptly filed after the plaintiff learned of the dismissal.

Watts maintains that he submitted to the court's jurisdiction when he sat for his deposition in the earlier case. However, it is unclear whether he sat for his deposition in the earlier case within 28 days after notice of the order of dismissal was given or after plaintiff learned that Watts was dismissed. Consequently, it cannot be determined if plaintiff would have been able to satisfy the third requirement. Moreover, there is nothing in the court rule that requires that a plaintiff file a motion to set aside a dismissal of a party as opposed to filing a new lawsuit against that party. Given that the court rules do not contain such a requirement, we are not persuaded that plaintiff's decision to file a second lawsuit instead of moving to set aside the dismissal under MCR 2.102(F) constitutes a "substantial defect or irregularity."

Watts next suggests that plaintiff's proofs of service in the instant case were defective and, as a result, he was unaware of this case. He complains that the trial court "out of hand" dismissed his affidavit averring that he was unaware of this case and never saw the complaint. The record belies his claim. The trial court found Watts's affidavit to be not credible. In doing so, the court considered many of the factors articulated in *Tolas Oil & Gas Exploration Co*, 347 Mich App at 295. Specifically, the court determined: (1) Watts never responded to the second complaint; (2) service was not defective; (3) Watts intentionally evaded service on this case and the earlier case; and (4) Watts should have been aware of the cases against him because of his participation in the deposition.

The court's findings are supported by the record. First, the court referenced Watts's deposition testimony in the earlier case. Specifically, when Watts was asked if he was aware of the instant case, he stated that he was not. And when asked if he was aware that service was

attempted in the instant case, he responded that his supervisor had informed him that a letter was sent for him. That testimony is supported by the fact that plaintiff sent a proof of service via certified mail to Watts's place of employment and a co-worker signed for it. Regardless of whether that constituted proper service, it allows for an inference that he was, in fact, aware that service was being attempted in the instant case.

Next, the trial court further noted that the defense lawyer in the earlier case was present at the deposition and should have been aware of the instant case. And, although the court recognized that mail could be lost or stolen, the court found that the summons and complaint had been properly tacked to the door of Watts's apartment. The court found Watts's claim to have never seen the summons and complaint unbelievable. Watts asserts that the photograph supporting that the documents were tacked to his door could be a photograph of any door, but he did not provide any evidence to support that claim. Instead, he admits that it was his address on the affidavit and proof of service indicating that the documents had been tacked to his door. He has identified no irregularity with that affidavit and proof of service.

In light of the foregoing, the trial court did not err by determining that Watts's affidavit claiming that he had not received notice of the complaint was not credible. Consequently, given that Watts cannot show that there was a substantial irregularity or defect in the proceedings, and given that the court found that Watts had intentionally attempted to avoid service of process and then falsely claimed ignorance of the proceedings, we conclude that Watts has failed to meet his burden of showing that there was good cause to set aside the default. The trial court, therefore, did not abuse its discretion by denying his motion to set aside the default based upon the lack of good cause.

## III. MOTION FOR DEFAULT JUDGMENT

### A. STANDARD OF REVIEW

Watts next argues that the court erred by entering a default judgment against him in the amount of $4.5 million. A court's decision to grant a default judgment is reviewed for an abuse of discretion. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011).

Watts also asserts that he was entitled to a jury trial on damages. However, he raised that issue for the first time in his motion for reconsideration in the trial court. As a result, it is not preserved for appellate review. See *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 521; 773 NW2d 758 (2009). "Michigan generally follows the raise or waive rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Accordingly, by failing to raise that aspect of his argument below, Watts has waived review of it on appeal.

### B. ANALYSIS

Watts argues that plaintiff failed to prove the damages he sought. We agree. While a default determines the issue of liability, *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015), "plaintiff bears the burden to prove the damages sought by a preponderance of the evidence." *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014). "A party

asserting a claim has the burden of proving its damages with reasonable certainty." *Berrios v Miles, Inc*, 226 Mich App 470, 478; 574 NW2d 677 (1997).

At the motion hearing, plaintiff requested damages for: (1) conscious and physical pain and suffering by decedent between the collision and his death; (2) medical and hospital expenses; (3) funeral expenses; (4) loss of financial support; and (5) loss of society and companionship. He did not submit evidence regarding the hospital expenses, however. Plaintiff also admitted that there were no funeral expenses, and he confirmed that Ragan was not married, had no dependents, and had no income. To support his claim for conscious and physical pain and suffering, plaintiff listed the findings of the medical examiner. The record, however, is devoid of any evidence that Ragan was alive or conscious at the time that Watts struck him with the bus. If he were dead or unconscious at the time that the bus struck him, then there would be no *conscious* pain and suffering inflicted by Watt's gross negligence. Finally, to support his claim for loss of society and companionship, plaintiff briefly testified that he and Ragan were close and enjoyed spending time together by bowling and walking. Thereafter, plaintiff's lawyer stated that, based upon her 15 years of experience as a lawyer, $4.5 million in damages was sufficient for a wrongful death. She did not present any documentary support for her opinion on the value of the case.

On this record, plaintiff did not meet his burden establishing his claim for $4.5 million in damages. His testimony was brief and did not discuss his relationship with Ragan outside of stating that they were close. There were no funeral expenses and no evidence of Ragan's medical costs. The record is devoid of any evidence that Ragan was alive or conscious at the time he was hit by the bus. And the only evidence plaintiff offered in support of his claim for $4.5 million was his lawyer's unsupported and unsworn opinion on the case's value. While plaintiff suffered a tragedy, he still had the burden of establishing damages. *Hannay*, 497 Mich at 79. He did not do so in this case. The trial court clearly erred by finding $4.5 million in damages on this record. Plaintiff did not meet that burden, and the trial court erred when it determined that he had. See *Traverse City Record-Eagle v Traverse City Area Pub Schs Bd of Educ*, 337 Mich App 281, 286; 975 NW2d 104 (2021) ("Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made."). As a result, the trial court erred by granting plaintiff's motion for default judgment. *Jackson*, 342 Mich App at 24.[1] Remand for further proceedings regarding the proper amount of damages is necessary.

On remand, the trial court should keep in mind that the matter of comparative negligence "encompasses aspects of both liability and damages." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 81; 618 NW2d 66 (2000). In cases involving a default the reviewing court is "faced with the difficult task of balancing the liability aspect of comparative negligence and the damages aspect of comparative negligence." *Id*. The *Kalamazoo Oil* Court recognized that "there is no obvious or ready answer" to resolve that tension. *Id*. However, it concluded that the court retains discretion to permit the defendant to introduce "evidence of a party's comparative negligence" when determining damages. *Id*. at 88. Moreover, the court suggested that doing so may be more appropriate in cases where a default is entered for reasons other than as sanctions for improper

---

[1] In light of our determination that the court erred by entering the default judgment, we need not address Watts's remaining arguments.

conduct. *Id*. at 87. Thus, on remand, the trial court should not feel constrained to limit Watts from presenting evidence relative to comparative negligence because, such information may be necessary for a proper determination of the damages in this case.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs are awarded. MCR 7.219(A).

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien